UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


TRAVIS LEVERTT FLETCHER,

     Plaintiff,

v.                                                                    Case No. 5:17cv146-MCR-CJK

OFFICER CHARNA OBRYAN,
SERGEANT C. STEWART,
NURSE BROWN, and
WARDEN J. BARFIELD,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's amended civil rights complaint

(doc. 21), filed pursuant to 42 U.S.C. § 1983.  The undersigned previously entered an

order (doc. 17) noting plaintiff's initial complaint failed to state a viable claim for

relief against one or more of the defendants and allowing plaintiff an opportunity to

cure the deficiencies in an amended complaint.  Plaintiff filed an amended complaint.

Plaintiff's amended complaint, however, is based on the same facts, and names the

same defendants, as his original complaint and is deficient for the reasons stated with

regard to plaintiff's initial complaint.  It being apparent plaintiff cannot state a viable

claim for relief against the defendants based on the facts alleged, the undersigned recommends the matter be dismissed.

I.      Background

Plaintiff filed an amended complaint against Officer Charna O'Bryan, Sergeant C. Stewart, Nurse Brown, and Warden J. Barfield, asserting claims under the Eighth and Fourteenth Amendments based on an incident in which Officer O'Bryan allegedly observed plaintiff in the shower. Specifically, plaintiff claims that on October 16, 2016, he was "conducting routine hygiene including taking a shower" and that "[u]pon . . . completion of taking a shower [he] was called to the officer's station where [he] was questioned by Officer O'Bryan and Sergeant Stewart." Doc. 21 at p. 6. "It was later determined [plaintiff] would be going to confinement for masturbating in the shower." Doc. 21 at p. 6.

According to plaintiff, "[t]he video cameras in the . . . housing units has full, unobstructed view to the end shower stall to view inmates naked body and showering." Doc. 21 at p. 6. Plaintiff alleges O'Bryan watched on a video camera as he took a shower and "knowingly indulged in voyerism," which plaintiff characterizes as "sexual abuse/sexual misconduct." Doc. 21 at p. 6. Plaintiff complains Stewart was advised of the incident and "told of sexual abuse being

Case No. 5:17cv146-MCR-CJK

committed," but "trivialized the incident and acted to embarrass and demean Plaintiff." Doc. 21 at p. 6. Plaintiff claims Stewart was deliberately indifferent in "fail[ing] to notify proper authorities of P.R.E.A./sexual abuse," despite his obligation, as the internal security officer, to do so. Doc. 21 at p. 6.

Plaintiff claims Nurse Brown, who apparently conducted plaintiff's pre-confinement examination, "exhibited deliberate indifference as she was notified of Plaintiff having a psychological emergency" and "reporting sexual abuse committed by Defendant O'Bryan." Doc. 21 at p. 7. According to plaintiff, "Defendant Brown has an obligation and duty to report both psychological emergencies and incidents of sexual abuse." Do. 21 at p. 7. Plaintiff explained he "has extensive history of mental illness and diagnosis of impulse control disorder" and says Brown's alleged deliberate indifference "posed a substantial risk of serious harm where plaintiff has attempted suicide and mental and emotional injury must account for injury as the physical is not the only aspect of a human." Doc. 21 at p. 7. Plaintiff maintains "[t]here are requirements and procedures one must follow when inmates report psychological emergencies and sexual abuse and Defendant Brown failed to properly follow requirements and procedures." Doc. 21 at p. 7.

Warden Barfield, plaintiff avers, acted with deliberate indifference in "ignoring the reporting of sexual abuse committed by employees under his supervision and not properly following the law and procedures under his supervision set forth in governing them."  Doc. 21 at p. 7.  Plaintiff says "Warden Barfield received knowledge of sexual abuse incident in which he failed to act according to set rules, procedures, laws, and guidelines" which impose upon him "an obligation and duty to report incidents of P.R.E.A./sexual abuse and see to its proper proceeding."  Doc. 21 at p. 7.

Plaintiff alleges that "[d]ue to all of these defendants act of deliberate indifference and actions under color of state law, Plaintiff has been made to suffer including being placed in cells with poor functioning toilets . . . , was brutally assaulted by correction officer's on 10/7/2017."  Doc. 21 at p. 7.  In plaintiff's view, "[a]ll Defendants are responsible as these refusal to act has led to retaliation, mental, emotional, and physical harm being beat by staff, property thrown away."  Doc. 21 at p. 7.  Plaintiff says he was "forced to sleep in a flooded cell where prior the inmate broke the fire sprinkler safety device, this device was broken in cell Q-3108."  Doc. 21 at p. 7.

Plaintiff claims O'Bryan violated his Eighth Amendment rights and prison procedures, as well as the Prison Rape Elimination Act ("PREA"), and committed voyeurism.   Plaintiff claims Stewart violated his Fourteenth Amendment rights because he "had a duty and obligation to report sexual abuse and didn't in accordance with" prison procedures and the PREA.   Plaintiffs says Brown was deliberately indifferent and also violated his Fourteenth Amendment rights and Florida law in not performing her "duty and obligation to report incidents of sexual abuse committed by staff," depriving him of due process.   Doc. 21 at p. 9.   Plaintiff alleges Warden Barfield violated his Eighth and Fourteenth Amendment rights, as well as Florida law, and acted with deliberate indifference "in not following proper procedure" as outlined in Florida law.   Doc. 21 at p. 9.   Plaintiff claims to have been "brutally assaulted by staff and . . . placed in unsanitary confinement cells.   All results of retaliation that the institution has been made aware of and Warden Barfield is responsible for the institution."   Doc. 21 at p. 10.   "All Defendants," plaintiff claims, "have acted under color of state law, deprived plaintiff of rights to be free from cruel and unusual punishment and right to Due Process in sexual abuse procedure, privilege of visitation, not being brutally assaulted and retaliated against, secured by the Constitution and laws of the United States."   Doc. 21 at p. 10.   Plaintiff seeks

declaratory and injunctive relief against the defendants in their official capacities, as well as compensatory and punitive damages against the defendants in their individual capacities.

Because plaintiff is proceeding *in forma pauperis*, the court must dismiss his complaint if it determines it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Dismissals for failure to state a claim are governed by the same standard as FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).

In determining whether the complaint states a claim upon which relief may be granted, the court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe

the motion to dismiss standard and dismissing plaintiffs' case for failure to state a claim because plaintiffs had "not nudged their claims across the line from conceivable to plausible"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "some person, acting under color of state law, deprived plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States." *Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985) (internal marks omitted); 42 U.S.C. § 1983. Here, plaintiff asserts claims under the Eighth and Fourteenth Amendments based on alleged sexual misconduct, conditions of confinement, and procedural violations.

In support of his Eighth Amendment claim stemming from alleged sexual misconduct, plaintiff repeatedly references the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. §§ 15601–09. As this court recognized, the PREA "was enacted in an effort to lessen the occurrence of rapes in prisons. Its main focus is upon compiling statistics and developing standards, and regulating federal funding in an effort to combat prison rapes." *Gibson v. Kent*, No. 3:15CV458/MCR/EMT,

Page 8 of 22

2016 WL 7384646, at *2 (N.D. Fla. Nov. 18, 2016), report and recommendation

adopted, No. 3:15CV458/MCR/EMT, 2016 WL 7379002 (N.D. Fla. Dec. 20, 2016)

(*citing* 42 U.S.C. §§ 15602, 15605). "Nowhere in the PREA is there language to

suggest that part of its purpose was to create a private cause of action or a federal

right which could be enforced in a Section 1983 action." *Id.* "Thus, it has been

uniformly held that the PREA does not create a private right of action whereby an

inmate such as Plaintiff may seek relief." *Id.* (*citing Krieg v. Steele*, 599 F. App'x

231, 232-33 (5th Cir. 2015); *Hawkins v. Walden*, No. 5:15-CV-208 (CAR), 2016 WL

5660338, at *7 (M.D. Ga. Sept. 28, 2016) (collecting cases); *Grindling v. Diana*, No.

16-00424 ACK-KJM, 2016 WL 6080825, at *3–4 (D. Haw. Sept. 9, 2016); *Barhite*

*v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014);

*Jones v. Schofield*, No. 1:08-CV-7 (WLS), 2009 WL 902154 at *2 (M.D. Ga. Mar.

30, 2009)). To the extent plaintiff relies on the PREA, therefore, his claims fail as a

matter of law.

    With regard to plaintiff's remaining claims regarding the conditions of his

confinement, "[t]he Constitution does not mandate comfortable prisons, but neither

does it permit inhumane ones, and it is now settled that the treatment a prisoner

receives in prison and the conditions under which he is confined are subject to

scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal marks and citations omitted). "In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Id.* "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal marks and citation omitted).

"The Supreme Court has developed a two-part analysis to govern Eighth Amendment challenges to conditions of confinement." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." *Id.* (*quoting Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "The challenged condition must be 'extreme.'" *Id.* (*quoting Hudson*, 503 U.S. at 9). "While an inmate 'need not await a tragic event' before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33 , 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety, id. at 35, 113 S.Ct. at 2481."

*Chandler*, 379 F.3d at 1289. "Moreover,

> 'the Eighth Amendment requires more than a scientific and
> statistical inquiry into the seriousness of the potential harm
> and the likelihood that such injury to health will actually be
> caused by exposure to [the challenged condition of
> confinement]. It also requires a court to assess whether
> society considers the risk that the prisoner complains of to
> be so grave that it violates contemporary standards of
> decency to expose anyone unwillingly to such a risk. In
> other words, the prisoner must show that the risk of which
> he complains is not one that today's society chooses to
> tolerate.'"

*Id.* (*quoting Helling*, 509 U.S. 36). "The Eighth Amendment thus guarantees that

prisoners will not be 'deprive[d] . . . of the minimal civilized measure of life's

necessities.'" *Id.* (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

"Second, the prisoner must show that the defendant prison officials 'acted with

a sufficiently culpable state of mind' with regard to the condition at issue." *Id.*

(*quoting Hudson*, 503 U.S. at 8). "The proper standard is that of deliberate

indifference." *Id.* "Negligence does not suffice to satisfy this standard, but a prisoner

need not show that the prison official acted with "'the very purpose of causing harm

or with knowledge that harm [would] result,'*Farmer v. Brennan*, 511 U.S. 825, 835,

114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994)." *Chandler*, 379 F.3d at 1289

(internal citation omitted). "In defining the deliberate indifference standard, the

*Farmer* Court stated:

> '[A] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must
> both be aware of facts from which the inference could be
> drawn that a substantial risk of serious harm exists, and he
> must also draw the inference.'"

*Id.* at 1289-90 (*quoting Farmer*, 511 U.S. at 837).

The Eleventh Circuit has "join[ed] other circuits recognizing that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment." *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (*citing Giron v. Corrections Corp. of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997); *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997)).  As the Eleventh Circuit observed, "'[s]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* (*quoting Boddie*, 105 F.3d at 861).

"Following *Boddie*," the court explained "there is an objective component of the inquiry, which requires that the injury be 'objectively, sufficiently serious,' and a subjective component, which requires the prison official have a 'sufficiently

culpable state of mind.'" *Id.* "However, under our circuit precedent about the nature of actionable injuries under the Eighth Amendment, an injury can be 'objectively, sufficiently serious' only if there is more than *de minimis* injury." *Id.* The court found "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury" and dismissed plaintiff's Eighth Amendment claim. Similarly, in *Boddie*, the Second Circuit held "a small number of incidents in which [plaintiff] allegedly was verbally harassed, touched, and pressed against without his consent" insufficient to state an Eighth Amendment claim. 105 F.3d at 861. The court found "[t]he isolated episodes of harassment and touching alleged by the plaintiff . . . despicable and, if true, . . . potentially . . . the basis of state tort actions," but not "harm of federal constitutional proportions as defined by the Supreme Court." *Id.*

Plaintiff's allegations regarding the conditions of his confinement do not rise to the level of an Eighth Amendment violation, as plaintiff has failed to allege a sufficiently serious condition or that any defendant was aware of such condition or even facts from which an inference could be drawn that a substantial risk of serious harm existed. If Officer O'Bryan in fact watched plaintiff while in the shower, she may have committed an unsavory act but not an act sufficiently serious to rise to the

level of a constitutional violation.  Hence, not only has plaintiff failed to allege facts from which Officer O'Bryan could be held liable for alleged "voyeurism," but he also has failed to allege facts from which the remaining defendants could be held liable for failing to take action as a result of Officer O'Bryan's alleged conduct.  The alleged unsanitary cell conditions also are insufficient for Eighth Amendment liability, particularly considering there is no allegation they posed a threat to plaintiff. In addition, plaintiff has not alleged more than *de minimis* injury resulting from the alleged unconstitutional conditions of confinement.  Plaintiff, therefore, has failed to state a viable Eighth Amendment claim against the defendants.

The same is true with regard to plaintiff's Fourteenth Amendment claim.  In *Sandin v. Conner*, 515 U.S. 472, 478, 484 (1995), the Supreme Court recognized only 2 instances in which a prisoner may claim a constitutionally protected liberty interest which implicates constitutional due process concerns:  (1) when actions of prison officials have the effect of altering the inmate's term of imprisonment, and (2) where a prison restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Plaintiff has alleged neither.  Plaintiff thus has failed to plead a Fourteenth Amendment substantive due process claim.

To the extent plaintiff seeks to assert a Fourteenth Amendment procedural due process claim, he still fails. Such a claim requires proof of 3 elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). "There can be no doubt that, at a minimum, the Due Process Clause requires notice and the opportunity to be heard incident to the deprivation of . . . property at the hands of the government." *Id.* (internal marks omitted). "However, due process is a flexible concept that varies with the particular circumstances of each case, and to determine the requirements of due process in a particular situation, we must apply the balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)." *Grayden*, 345 F.3d at 1232 (internal marks omitted).

"Under the *Mathews* balancing test,

> due process generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* (quoting *Mathews*, 424 U.S. at 335).   For the reasons set forth above with regard

to the PREA and rules, procedures, and regulations, plaintiff has pled no facts even

arguably giving rise to a procedural due process claim.

To the extent plaintiff seeks to hold any defendant liable for the acts of his or

her subordinates, "[i]t is well established in this Circuit that supervisory officials are

not liable under § 1983 for the unconstitutional acts of their subordinates on the basis

of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263,

1269 (11th Cir. 1999) (internal marks and citation omitted); *see also Polk Cnty. v.*

*Dodson*, 454 U.S. 312 (1981); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.

2003).   "The mere right to control, without any control or direction having been

exercised and without any failure to supervise, is not sufficient to support 42 U.S.C.

§ 1983 liability." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 n.58 (1979).

"Supervisory liability occurs either when the supervisor personally participates in the

alleged constitutional violation or when there is a causal connection between the

actions of the supervising official and the alleged constitutional deprivation." *Brown*

*v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted).   In *Douglas v.*

*Yates*, 535 F.3d 1316 (11th Cir. 2008), the Eleventh Circuit specified the

circumstances in which a causal connection can be shown sufficient to render a

supervisor liable on a § 1983 claim, as follows:

> when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* at 1322 (*citing West v. Tillman*, 496 F.3d 1321, 1328-29 (11th Cir. 2007)). Plaintiff presents no such allegations against any defendant.

To the extent plaintiff sues the defendants for damages in their official capacities, such claims are barred by the Eleventh Amendment. Indeed, "[a]bsent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the

Fourteenth Amendment to override that immunity."  (citations omitted)).  A suit against a state employee in his or her official capacity is deemed a suit against the state for Eleventh Amendment purposes.  *Will*, 491 U.S. at 71; *Gamble*, 779 F.2d at 1512 (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983.").  Plaintiff's claims for damages against the defendants in their official capacities thus fail as a matter of law.

To the extent plaintiff sues the defendants in their individual capacities, his claims are barred by the doctrine of qualified immunity.  The doctrine of qualified immunity is a guarantee of fair warning.  *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999).  It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730 (2002); *Conn v. Gabbert*, 526 U.S. 286 (1999) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800 (1982)); *Powell v. Georgia Dep't of Human Resources*, 114 F.3d 1074 (11th Cir. 1998).  Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability,

and hence, liability attaches only if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (*citing United States v. Lanier*, 520 U.S. 259, 270 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

The Supreme Court has established a 2-pronged test for evaluating a claim of qualified immunity:  (1) whether a constitutional right has been violated on the facts alleged; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001).  The court may exercise its sound discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. ---, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).  The court may grant qualified immunity if the plaintiff fails to carry his burden on either of the 2 prongs. *See, e.g., Pearson*, 129 S. Ct. at 822-23 (evaluating

only *Saucier's* second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

The second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Marsh v. Butler Cnty.*, 268 F.3d 1014, 1031-33 (11th Cir. 2001) (en banc). The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. *Hope*, 536 U.S. at 739; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no requirement that previous cases be "fundamentally" or even "materially" similar. *Hope*, 536 U.S. at 741. Instead, the law merely must give defendants "fair warning" that their actions are unconstitutional. *Id.* In light of pre-existing law, the unlawfulness must be apparent. *Id.*; *Creighton*, 483 U.S. at 640.

In the Eleventh Circuit, "the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4. (11th Cir. 1997); *see McClish v.*

*Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) ("We have held that decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law."). Having found plaintiff failed to plead facts to support a finding of a constitutional violation, he could not defeat a claim of qualified immunity.

Finally, plaintiff is not entitled to at least some of the relief he seeks. According to the Prison Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "[T]he phrase 'Federal civil action' means all federal claims, including constitutional claims." *Napier v. Preslicka*, 314 F.3d 528, 532 (11th Cir. 2002). This action, brought by plaintiff under 42 U.S.C. § 1983, is a "Federal civil action" under this definition. It is evident from the face of plaintiff's pleadings that plaintiff was a prisoner at the time he filed this action and that the alleged harm occurred while he was in custody. Plaintiff does not allege any physical injury. Accordingly, plaintiff is prohibited under the PLRA from recovering the damages he seeks. *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999)

("*Harris I*"), *vacated in part and reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc) ("*Harris II*") (affirming district court's dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive damages claims arising from prison officials' alleged unconstitutional conduct, where prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury).  If successful, the only damages plaintiff could recover would be nominal ones (ordinarily $1.00).

Accordingly, it is respectfully RECOMMENDED:

1.  That this case be DISMISSED WITHOUT PREJUDICE for plaintiff's failure to state a claim upon which relief can be granted.

2.  That the Clerk be directed to close the file.

At Pensacola, Florida this 25th day of January, 2019.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 5:17cv146-MCR-CJK

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No. 5:17cv146-MCR-CJK